# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Merrimack Superior Court
163 North Main St./PO Box 2880
Concord NH 03302-2880

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name: Nicole Smith-Emerson v Citizens Financial Group, Inc., Liberty Life Assurance Company of Boston, and Cigna Group Insurance
Case Number: 217-2014-CV-00085

Date Complaint Filed: February 19, 2014

A Complaint has been filed against Cigna Group Insurance; Citizens Financial Group, Inc.; Liberty Life Assurance Company of Boston in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

April 06, 2014 — Nicole Smith-Emerson shall have this Summons and the attached Complaint served upon Cigna Group Insurance; Citizens Financial Group, Inc.; Liberty Life Assurance Company of Boston by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law.

April 27, 2014 — Nicole Smith-Emerson shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice.

30 days after Defendant is served — Cigna Group Insurance; Citizens Financial Group, Inc.; Liberty Life Assurance Company of Boston must file an Appearance and Answer or other responsive pleading form with this Court. A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter.

**Notice to Cigna Group Insurance; Citizens Financial Group, Inc.; Liberty Life Assurance Company of Boston:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
Charles G. Douglas, III, ESQ
Douglas Leonard & Garvey PC
14 South Street
Concord NH 03301

BY ORDER OF THE COURT

William S. McGraw
Clerk of Court

February 20, 2014

(485)

NHJB-2678-S (10/23/2013)

THE STATE OF NEW HAMPSHIRE

MERRIMACK, SS                                                                    SUPERIOR COURT

Nicole Smith-Emerson
54 Profile Avenue
Concord, NH 03301

v.

| Citizens Financial Group, Inc. | Liberty Life Assurance | Cigna Group Insurance |
|---|---|---|
| One Citizens Plaza | Company of Boston | Corporate Headquarters |
| Providence, RI 02903 | Liberty Mutual Group, Inc. | Two Liberty Place |
|  | 175 Berkeley Street | 1601 Chestnut Street |
|  | Boston, MA 02116 | Philadelphia, PA 19192 |

## COMPLAINT

I. **Parties**

1. The plaintiff, Nicole Smith-Emerson, is a resident of the State of New Hampshire with an address of 54 Profile Avenue, Concord, NH 03301.

2. Defendant, Citizens Financial Group, Inc. is a bank, with a principal place of business at One Citizens Plaza, Providence, RI 02903. Citizens employed the plaintiff and provided short and long term disability benefits to her.

3. Defendant, Liberty Life Assurance Company of Boston is a corporation, with a principal mailing address of Liberty Mutual Group, Inc., 175 Berkeley Street, Boston, MA 02116, and is claims administrator for the Citizens disability plan.

4. Defendant, Cigna Group Insurance is a corporation, with a corporate headquarters address of Two Liberty Place, 1601 Chestnut Street, Philadelphia, PA 19192, and determines long term disability under the plan.

II. **Jurisdiction & Venue**

1

5. This is an ERISA action brought pursuant to 29 U.S.C. §1132(a)(1)(B). This Court has jurisdiction pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1000-1461 over which this Court possesses jurisdiction pursuant to 29 U.S.C. §1132(e).

6. Venue is proper because Merrimack is the county in which the plaintiff resides.

### III. Introduction

7. Nicole Smith-Emerson is a 43 year old married mother of two, who began work in 2001 at Citizens Bank as a Senior Loan Officer. She is a graduate of Fisher College in Massachusetts. She enjoyed her work and in 2011 was honored for being a mortgage professional by New Hampshire Magazine.

8. Unfortunately, in 2008, Nicole was attending her son's soccer game at school when a miskicked ball hit her in the head. That incident began a series of 7 surgeries from 2008 to 2012, resulting in fusions, misplaced fixtures, etc. She has been diagnosed with failed neck syndrome and complex regional pain syndrome rendering her unable to work more than 20 hours per week.

9. Due to her surgeries and pain, the plaintiff was on short-term disability from December 6, 2011 through June 3, 2012. Thereafter, she went on long-term disability until September 6, 2013. See Tab A.

10. On September 5, 2013, Nicole received a letter from the administrator of Citizens Financial Group, Inc.'s Long Term Disability policy terminating her benefits. A timely appeal was filed on November 27, 2013.

2

11. The policy providing the benefit is through Cigna Group Insurance and provides that:

> You become eligible to receive long-term disability benefits after you have been disabled for six months (180 days), on the 181st continuous day of total disability.
>
> Your eligibility for long-term disability benefit payments is determined by Cigna Group Insurance (Cigna). If at the end of your short-term disability period you remain disabled, Cigna will determine your eligibility for long-term disability payments based on the information in your file at the end of your short-term disability period. Cigna will notify you if any additional information is needed to determine your eligibility for benefit payments. To remain eligible for benefits, you will have to provide satisfactory proof of your continued disability.

(Summary of Plan Description at page 11).

12. The administrative appeal was denied by a January 21, 2014, letter from Kimberly Murray, an Appeals Review Consultant, in Kentucky. Her letter said that the Liberty Life Assurance Company made its determination based on the provisions of Citizens Financial Group Inc.'s policy.

13. The financial incentive to deny plaintiff's claim is huge because she would have 19 years of benefits at the rate of about $88,000 a year for a total of $1,672,000.

IV. <u>Medical Summary</u>

14. In 2008, Nicole Emerson developed neck pain with pain and numbness down into her arms. She was apparently treated medically when she first presented to orthopedics with these complaints, and when medical treatments failed, she presented to Dr. Tung Nguyen, a neurosurgeon, for further treatment. On November 10, 2008, she

was taken to the operating room for an anterior cervical discectomy and fusion (ACDF) of C6-7.

16. She initially did well, but in October 2009, she returned with complaints of recurrent pain and numbness in her arms/hands as well as headache. The MRI revealed degenerative changes at C5-6 and bilateral foraminal stenosis so on October 7, 2009, she was taken to the operating room for an ACDF with allograft. Repeat imaging studies done on December 22, 2009, showed no motion at the fused sites and unchanged hardware appearance.

16. On January 4, 2010, Nicole called Dr. Nguyen and advised him that she was having severe neck, shoulder and arm pain as well as a "massive headache." He recommended a repeat MRI as well as revision surgery due to pseudoarthrosis (failed fusion) at C5-6. Radiology studies apparently showed movement at C5-6 but no new herniation, so on January 14, 2010, she was taken back to the operating room for revision. A biomechanical device was used at the C5-6 level and the C6-7 plate was removed and a C5-7 plate was inserted.

17. Records for August 24, 2010, indicate that she "has constant neck pain," and "bilateral arm pain radiating to her hands." An MRI had been done and according to the note showed central disc herniation at C4-5, as well as pseudoarthrosis at C5-6 and C6-7. Because she had failed previous nonsurgical attempts, Dr. Nguyen felt she would likely fail again. He recommended that she undergo an ACDF of C4-5 and revision fusion of C5-7. During this surgery, upon retrieval of the hardware, he found

4

that the C5 screw was fractured. An allograft bone piece was used with bone marrow aspirate to form a new plate, and the hardware was replaced.

18. On October 28, 2011, Dr. Nguyen noted that she had evidence of pseudoarthrosis of C6-7. She continued to complain of pain and numbness in her neck and arms so they discussed the posterior approach versus another anterior approach. Ultimately she opted for the anterior approach and that day she was taken to the operating room where she underwent "exploration of fusion" of C6-7. Dr. Nguyen attempted to remove the screws; however the screws at C7 were stripped and, therefore, none of the hardware could be removed. The surgery was terminated and she was advised that they would need to proceed with a posterior approach.

19. On November 4, 2011, she was taken back to the operating room for a posterior approach and she underwent fusion and instrumentation of C5-T1 using a bone marrow aspirate from a separate incision, allograft and morselized auto graft. During the surgery he tested the individual lamina and found that C6-7 and C7-T1 continued to have motion, so lateral screws were placed. When she was seen postoperatively, she was reporting pain of 10 on a scale of 10 with spasms of her neck.

20. On January 10, 2012, she was seen in follow-up, had lost weight and was still complaining of ongoing posterior neck pain and cervical spasm.

21. On February 9, 2012, she returned for follow-up and reported ongoing numbness and pain down both arms and into her fingers. She also reported thoracic pain and spasms:

> Complaints today are continued paresthesia and hypoesthesia down both arms to the mid forearm with numbness and tingling intermittent into the fingers on the left. She describes a throbbing/aching pain which interrupts her normal daily activities..... She also describes significant pain in the mid to lower thoracic area she has spasms which radiate up posteriorly up the back of the neck into the trapezius muscle group as well as subscapular and into the rhomboids. She is teary.

In physical therapy on March 15, 2012, Ms. Emerson reported:

> pain level @10/10..... Nicole has not been seen in PT since 2/15/12. She continues to experience significant pain at the cervical spine and throughout the left UE [upper extremity] (to below elbow) that is constant. Left hand digits 1-3 continues to present with constant paresthesias....the patient has continues to experience 'total body spasms' that are involuntary and difficult to control....Function: OOW [out of work], disturbed sleep, limited ADL [activities of daily living] tolerance, limited tolerance to cooking/cleaning, restricted driving tolerance.

22. On March 20, 2012, she saw the Spine and Brain Center of New England and "she experienced spasms with movement in X-ray today. During her office visit she became teary and complained of severe spasm into the right trapezius. She had dyskinetic movements and rocking during our conversation."

23. The March 29 note says she "does have good days when she can perform activities around the house." She never asserted she could do nothing, so the minor activities shown on video surveillance of her is not inconsistent with that note.

24. On April 26, 2012, the notes said:

6

> She has complain[t]s of numbness in her left hand in the thumb index finger and middle finger. She also complains to left leg pain down the posterior aspect. She had chiropractic manipulation this week to help with her low back pain. During the evaluation and treatment, the patient had 2 episodes of 'spams' which involves shaking of her entire body and almost a tonic-clonic pattern.

25. In May of 2012 a referral was made to Interventional Pain Management of Concord. Dr. Robert Spencer reported her then pain as 9 on a scale of 10. He found:

> Definite headache pain,
> Definite neck pain/cervicalgia,
> Definite back pain, and
> Possible extremity pain.

26. In 2013, she consulted with Dr. Pallatroni of Exeter to see if she should have a cervical column stimulator installed. His July 8, 2013, consult says:

> Reason for consultation: Evaluation for cervical column stimulator.... It seems like she started off with a C6-7 disk herniation and one thing led to another. She now has an anterior fusion from C4 to C7 and a dorsolateral fusion form C5 to T1, so she has had a total of 7 procedures, has been left with debilitating neck pain and spasms in her left lower extremity....she is in obvious discomfort and is teary... She underwent multiple episodes of spontaneous spasms of the left leg, to the point where I could not even exam her toady but for the most part she seems to be neurologically intact....She has had an MRI of the lumbar spine done in 2012... a CT scan and a CT myelogram of the cervical spine that shows.... a p[late anteriorly placed form C4 to C7 that is very crooked with the top left screw going into the C4 neural foramen. There does appear to be a pseudoarthrosis at C7-T1.... Impression: failed neck syndrome... The plan will be to arrange it for her to have an MRI of her neck and to have

the patient or her family member obtain all of the operative records from Dr. Tung Nguyen.

27. An MRI on July 22 reflected the following:

> It is difficult to evaluate due to susceptibility artifact. I even now question hardware at the C7 vertebral level. Imaging of the disks would suggest diffuse desiccative change. I cannot exclude some type of bony fusion across the C5-C6 disk level..... At the C3-C4 disk level, I could not exclude a small posterior annular tear and what might be broad-based disk bulge.... I do not see any distinct disk herniation, although there is <u>annular tear and what might be disk bulge at C3-C4</u>. (Emphasis added).

28. Dr. Pallatroni filled out a Liberty Mutual Restrictions Form saying:

> Severe limited ROM [range of motion] in all neck movements, severe right shoulder neuropathic pain, severe leg spasticity.... restrictions from 8-23-13 to permanent.... estimated return to work date? None – <u>this woman is completely disabled</u> (emphasis added).

29. Since then a formal Functional Work Assessment was performed on September 17, 2013. The conclusion was:

> The patient demonstrates the ability to work/function part-time, 2-4 hours/day and 5 days/week at a sedentary capacity. Job accommodations are needed. Loan officer requires frequent sitting, light capacity. She requires positional changes every 15-30 minutes.

Her prognosis was only fair.

30. The assessment was followed up by a review at the PainCare Centers Merrimack by Dr. David Tung. His September 26, 2013, review says:

> Mrs. Nicole Emerson is under my care for chronic pain.... She has symptoms and complaints consistent with complex regional pain syndrome (CRPS) in the left arm.... Exam and physical exam changes consistent with CRPS have been

8

documented in the left arm on two occasions with Dr. McGowen and Steve Toscano-PAC.

31. As early as May 9, 2012, Dr. Spencer noted skin color changes in the fingers of her left hand which turned purple when numb, muscle weakness in her left arm, numbness in the fingers of her left hand and increased skin sensitivity in her left arm. Dr. Spencer opined that her symptoms are consistent with CRPS. A functional assessment at Concord Hospital Rehab noted reduced left hand grip. The therapist noted onset of left arm CRPS after the cervical surgery in December 2011.

32. A series of problems Nicole has is that the "left side anterior screw at C4 appears to extend into the left foramen transversariun" according to a Brigham & Women's Hospital CT myelogram taken on March 27, 2012. That hospital refused to do a surgical fix for fear of bursting her artery and killing her due to the bad location of that screw.

## V. Complex Regional Pain Syndrome

Definition:

33. Complex regional pain syndrome is an uncommon form of chronic pain that usually affects an arm or leg. Complex regional pain syndrome typically develops after an injury, surgery, stroke or heart attack, but the pain is out of proportion to the severity of the initial injury, if any.

Symptoms:

34. Signs and symptoms of complex regional pain syndrome include:

- Continuous burning or throbbing pain, usually in your arm, leg, hand or foot;
- Sensitivity to touch or cold;
- Swelling of the painful area;
- Changes in skin temperatures – at times your skin may be sweaty; at other times it may be cold;
- Changes in skin color, which can range from white and mottled to red or blue;
- Changes in skin texture, which may become tender, thin or shiny in the affected area;
- Joint stiffness, swelling and damage;
- Muscle spasms, weakness and loss (atrophy); and
- Decreased ability to move the affected body part.

Causes:

32.  Many cases of complex regional pain syndrome occur after a forceful trauma to an arm or a leg, such as a crush injury, fracture or amputation. Other major and minor traumas – such as surgery, heart attacks, infections and even sprained ankles – also can lead to complex regional pain syndrome.

33.  Ms. Emerson continues to experience severe pain with occasional swelling in her left arm. Even the slightest touch can cause her excruciating pain. Her left arm is frequently cold and becomes purplish and mottled. She has frequent muscle spasms in her arm and leg. Her joints pop on movement.

Because Ms. Emerson has had multiple surgeries, the nerves and soft tissue in her neck have been repeatedly traumatized.

34. Ms. Emerson's left arm has continued to deteriorate and she saw Dr. Devanny on November 20, 2013, who referred her to imaging for an MRI. They found tendinopathy and he has referred her back to physical therapy. On November 26, 2013, the therapist wrote that she is losing function in her left arm and her pain was a 9 or 10 on a 10 point scale. Her hand is numb and cold to the touch – symptoms of complex regional pain syndrome.

35. Her next surgical procedure was on January 6, 2014, when a spine stimulator was installed in her neck and upper back. This had been approved in 2011, but Nicole had hoped to avoid still another surgery.

## CLAIM FOR RELIEF

36. Plaintiff incorporates paragraphs 1 through 35 into this Claim for Relief;

37. This is a claim to recover benefits, enforce rights, and clarify rights to future benefits under 29 U.S.C. §1132(a)(1)(B);

38. Pursuant to §1132(a)(1)(B), Plaintiff as a participant in the Citizens Long Term Disability Plan, is entitled to initiate this action for a judicial determination and enforcement of benefits;

39. Defendants improperly denied Plaintiff's Long Term Disability Benefits to which she is entitled under the terms of the Plan, in contravention of the Plan and ERISA;

40. Based on the facts articulated above, Plaintiff asserts Defendants' denial of Plaintiff's Long Term Disability Benefits was arbitrary and capricious;

41. Based on the facts articulated above, Plaintiff asserts Defendants' denial of Plaintiff's Long Term Disability Benefits must be reviewed by this Court de novo in accordance with the case of Gross v. Sun Life Assurance Company of Canada. 734 F. 3d 1 (1st Cir. 2013).

WHEREFORE, the Plaintiff Nicole Smith-Emerson, respectfully requests this Honorable Court:

A. Enforce Plaintiff's rights under Defendant's group insurance plan;

B. Order Defendant to pay all past due disability benefits;

C. Order Defendant to pay ongoing disability benefits until such time the Plaintiff may no longer be considered disabled under the terms of Defendant's insurance policy;

D. Order Defendant to pay interest on past due disability benefits;

E. Order Defendant to pay Plaintiff's reasonable attorneys' fees and costs, pursuant to 29 U.S.C.A. 1132(g)(1); and

F. Grant such other and further relief as is just and equitable.

Respectfully submitted,
NICOLE SMITH-EMERSON
By her attorneys,
DOUGLAS, LEONARD &
GARVEY, P.C.

Date: February 14, 2014

By: _____
Charles G. Douglas, III, Bar #669

12

14 South Street, Suite 5
Concord, NH 03301
(603) 224-1988

A



**The Royal Bank of Scotland Group**

Leave Program Office ♦ 1 Citizens Drive RSD110 ♦ Riverside, RI 02915 ♦ USA ♦ p 888-394-9675 ♦ f 877-580-4763

September 6, 2013

Nicole L. Smith-Emerson
54 Profile Ave
Concord, NH 03301

Dear Ms. Smith-Emerson,

Our records indicate that you have been out on a leave of absence since 12/6/2011.

We were notified by our claims administrator that your Short Term Disability claim closed on 6/3/12 and that your Long Term Disability claim has now been closed.

Please contact Erika House at 888-394-9675 x 4854 **within five (5) business days** to discuss your current employment status. If you do not contact Ms. House **within five (5) business days** your employment will be terminated.

If you are planning on appealing the denial, you have 180 days from the date of the denial in which to do so. Should your denial be overturned on appeal, your employment with RBS may be restored.

We look forward to hearing from you.

Thank you,


Leave Program Office


✕ RBS